# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GABRIELLE C. BLACKWELL,<br><br>Plaintiff,<br>*v.*<br><br>WAGONER COUNTY BOARD OF COUNTY COMMISSIONERS; and MARK KETCHUM, individually,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) | Case No. 6:25-CV-456-JFH-JAR |

## <u>REPORT AND RECOMMENDATION</u>

This matter comes before the court on the Motion to Dismiss [Dkt. 8][1] of defendants Wagoner County Board of County Commissioners (the "Board") and Mark Ketchum ("Ketchum") (collectively, "defendants"), pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Gabrielle Blackwell ("plaintiff") filed a response in opposition [Dkt. 17] and defendants replied [Dkt. 19]. For the reasons set forth below, the undersigned recommends the Motion to Dismiss be granted in part.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

On August 13, 2025, plaintiff initiated this action in the District Court of Wagoner County, Oklahoma against James Hanning, in his individual capacity as Wagoner County Commissioner ("Hanning" or "Commissioner Hanning"), the Board, and Ketchum, asserting four causes of action: breach of contract as to the Board;

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and document numbers assigned by ECF.

promissory estoppel as to the Board; malicious interference with a contractual relationship as to Hanning and Ketchum; and tortious interference with prospective economic advantage as to Hanning and Ketchum. [Dkt. 2-2]. These defendants jointly moved to dismiss the Petition [Dkt. 2-9], and, after a hearing on such motion, the Wagoner County District Court dismissed all claims against Hanning and further dismissed the tortious interference claim as asserted against Ketchum [Dkt. 2-18].

Plaintiff filed a First Amended Complaint ("FAC")[2] on December 8, 2025, asserting seven causes of action: breach of contract as to the Board (Count I); promissory estoppel as to the Board (Count II); malicious interference with a contractual relationship as to Ketchum (Count III); a First Amendment retaliation claim under 42 U.S.C. § 1983 as to Ketchum (Count IV); a right of access claim under 42 U.S.C. § 1983 as to Ketchum (Count V); a *Burk* tort claim for violations of Oklahoma public policy as to the Board (Count VI); and a retaliation claim under the Oklahoma Occupational Health and Safety Standards Act ("OOHSSA"), 40 O.S. § 403(B), as to the Board (Count VII). [Dkt. 2-21]. Defendants subsequently removed this action to the United States District Court for the Eastern District of Oklahoma pursuant to 28 U.S.C. § 1331. [Dkt. 2, ¶ 4].

### B. PLAINTIFF'S ALLEGATIONS

Plaintiff worked for Wagoner County E-911 ("E-911") from February to June 2025. [Dkt. 2-12, ¶¶ 1, 6, 13-14]. E-911 is a municipal entity controlled by the Board,

[2] In Oklahoma, the initial pleading that commences a lawsuit is called a "petition," 12 O.S. § 2003; whereas, the initial pleading in federal practice is of course called a "complaint," Fed. R. Civ. P. 3. The court herein refers to plaintiff's First Amended Petition as the First Amended Complaint in conformity with the language used by federal courts.

which has authority to hire, fire, and appoint E-911 employees. [*Id.* ¶¶ 3-4]. Ketchum supervised plaintiff throughout her employment. [*Id.* ¶ 6].

According to the FAC, on June 3, 2025, Ketchum harassed plaintiff's supervising coworker for expressing fatigue and mental health concerns arising from working over sixty hours a week for twenty consecutive days. [*Id.* ¶ 7]. That same day, plaintiff reported Ketchum's conduct to E-911's Human Resources ("HR") department, speaking with Director Maria Rafalko ("Director Rafalko"). [*Id.* ¶ 8; *id.* at 35-36 (Summary of 6/3/2025 HR Meeting)]. A few hours later, Ketchum confronted plaintiff's coworker about the HR complaint and later stated that he wanted to terminate her employment. [*Id.* ¶ 9].

On June 5, 2025, Ketchum instructed plaintiff to submit a written report detailing her conversation with Director Rafalko. [*Id.* ¶ 10]. According to Wagoner County's "Policy Against Harassment and Discrimination and Complaint Procedure," harassment complaints must be handled "in as confidential a manner as possible." [*Id.* ¶¶ 10, 16; *id.* at 37-45 (Wagoner County Personnel Policy Handbook)]. Plaintiff again contacted HR; County Clerk Lori Hendricks ("Hendricks") instructed her to submit the report for Commissioner Hanning's review and, while acknowledging that Ketchum's conduct was improper, told plaintiff to "give him what he wants." [*Id.* ¶ 11].

That same day, Commissioner Hanning confirmed by email that he wanted a written summary of plaintiff's HR conversation, stated his intention to have Ketchum meet with E-911 employees to discuss the allegations against him, and noted that the

anti-harassment policy had "changed years ago." [*Id.* ¶ 12; *id.* at 25 (Plaintiff's Written Report), 33 (6/5/2025 Emails)]. Ketchum then asked plaintiff to sign a form acknowledging a "new policy" barring employees from contacting HR without a referral from their chain of command; she did not sign it. [*Id.* ¶ 13]. Plaintiff was terminated that afternoon. [*Id.* ¶ 14; *id* at 26-32 (6/5/2025 Termination Notice)].

## II. DISMISSAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the pleaded facts allow the court to draw a reasonable inference that defendants are liable for the alleged misconduct. *Id.* The court disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action[.]" *Id.*; *see Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011). The question is whether the complaint's well-pleaded factual allegations, assumed true, "plausibly give rise to an entitlement to relief." *Id.* at 679; *see Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## III. ANALYSIS

As a threshold matter, plaintiff contends her contract, promissory estoppel, and malicious interference claims were sustained by the Wagoner County District Court before removal and that "[a]s a matter of comity, the state court order should be respected." [Dkt. 17 at 5 (citing *Macarthur v. San Juan Cnty.*, 391 F.Supp.2d 895, 1021 (D. Utah 2005))]. Plaintiff acknowledges that this court may modify orders

entered before removal but maintains that the party seeking reconsideration must point to something new, which defendants have failed to do. [*Id.* (citing *Parson v. Farley*, 352 F.Supp.3d 1141, 1151-52 (N.D. Okla. 2018) (add'l citation omitted)].

The premise of the argument does not hold. An order entered by a state court before removal is treated as though validly entered in federal court, and it remains subject to revision by the court to which the action is removed. *See Parson*, 352 F.Supp.3d at 1151 (citing *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70 of Almeda Cnty*., 415 U.S. 423, 436 (1974)). More fundamentally, the pre-removal order adjudicated the sufficiency of the original complaint. Plaintiff concedes she thereafter filed the FAC, which superseded that pleading in its entirety. [Dkt. 17 at 5]. Defendants' motion is directed to the FAC, the only operative complaint, and no state court has passed upon it. Reviewing that pleading is therefore not reconsideration of anything, and comity supplies no reason to withhold review.

Defendants move to dismiss the FAC on several grounds: (1) plaintiff fails to state a breach of contract claim based on alleged violations of Wagoner County's Employee Personnel Policy Handbook ("Employee Handbook" or "Handbook"); (2) plaintiff fails to state an alternative claim against the Board for promissory estoppel; (3) the malicious interference claim fails under Rule 12(b)(6) because plaintiff does not allege that Ketchum acted in bad faith or against Wagoner County's interests in terminating her employment; (4) plaintiff's allegations fail to establish at least two necessary elements of a plausible § 1983 First Amendment retaliation claim against Ketchum; (5) Ketchum is entitled to qualified immunity on Counts V and VI; (6) the

Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 O.S. §§ 151, *et seq*., provides the Board with immunity against the *Burk* tort claim; and (7) Count VII fails as a matter of law because no private right of action exists under OOHSSA. The court addresses each ground in turn.

### A. COUNT I | BREACH OF CONTRACT

The FAC alleges that plaintiff's E-911 employment agreement constituted both an express and implied contract, that the Board breached said contract by violating certain Employee Handbook provisions, and that plaintiff suffered actual damages as a result. [Dkt. 2-21, ¶¶ 20-25]. Defendants argue that no contract—express or implied—arose from the Employee Handbook because the Board clearly and unambiguously disclaimed any intent to create an employment contract through any provisions of the Handbook, and because the FAC alleges no conduct inconsistent with that disclaimer. [Dkt. 8 at 4]. The court considers each theory in turn.

#### 1. Employee Handbook as the Basis of an Express Contract

To state a claim for breach of an express contract under Oklahoma law, a plaintiff must allege facts showing: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Dig. Design Grp., Inc., v. Info Builders, Inc.*, 2001 OK 21, 24 P.3d 834, 843. "Where an employment contract is of indefinite duration, it is terminable at will by either party." *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, 781. Under the at-will rule, "an employer may discharge an employee for good cause, for no cause or for cause morally wrong, without being thereby guilty of legal wrong." *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24, 26.

The Employee Handbook forecloses plaintiff's express contract theory by its own terms. As plaintiff herself pleads, it provides: "This handbook is designed to familiarize you with the policies and practices that apply to your employment. It is not intended to be and does not constitute a contract of employment." [Dkt. 2-21, ¶ 21]. The acknowledgement attached to the FAC is to the same effect, reciting that the Handbook "is not, nor is it intended to be a contract of employment" and that "the County Elected Official retains the right of employment-at-will to terminate his/her employees at any time for any reason not prohibited by Federal, State, or Municipal law." [*Id.* at 44].

Plaintiff's employment was accordingly of indefinite duration and terminable at will by either party, which means the Board could discharge her "for good cause, for no cause or for cause morally wrong, without being thereby guilty of legal wrong." *Burk*, 770 P.2d at 26; *see Hayes*, 905 P.2d at 781. Because no express contract was formed, the first element of the claim is unmet, and the remaining elements need not be addressed. *Dig. Design Grp.*, 24 P.3d at 843. To the extent Count I rests upon an express contract, it fails as a matter of law.

### 2. Employee Handbook as the Basis of an Implied Contract

An employee handbook may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist: "(1) competent parties, (2) consent, (3) a legal object, and (4) consideration." *Russell v. Bd. of Cnty. Comm'rs of Carter Cnty.*, 1997 OK 80, 952 P.2d 492, 501-02. Two limitations on the scope of implied contracts via an employee handbook stand identified by extant

Oklahoma caselaw: "(1) the manual only alters the at-will relationship with respect to accrued benefits, and (2) the promises in the employee manual must be in definite terms, not in the form of vague assurances." *Id.* at 502 (citations omitted). Although the existence of an implied contract generally presents an issue of fact, if the alleged promises are nothing more than vague assurances, the issue can be decided as a matter of law. *Id.*

Plaintiff does not defend Count I as an attempt to convert her at-will status into a right of continued employment. Her contention is narrower: the Employee Handbook guarantees certain procedures irrespective of at-will status, which the Board disregarded. She relies principally upon *Parker v. Town of Chelsea* ("*Parker I*"), 275 F. App'x 769 (10th Cir. 2008) (unpublished), and *Parker v. Town of Chelsea* ("*Parker II*"), 620 F.Supp.2d 1266 (N.D. Okla. 2008), and argues that the effect of any disclaimer, like the existence of an implied contract, is a question of fact not susceptible of resolution on the pleadings. [Dkt. 17 at 6-7]. She adds that equitable estoppel and waiver preclude the Board from disclaiming a handbook its officials invoked and disseminated. [*Id.* at 7-8 (citing *Ind. Nat'l Bank v. State Dep't of Human Servs.,* 1993 OK 101, 857 P.2d 53, 64; *Torres v. Torres*, 1998 OK CIV APP 166, 956 P.2d 166, 167) (add'l citation omitted)]. Defendants reply that *Parker I* is distinguishable and that the procedure applicable to plaintiff's third-party scheduling grievance was the Handbook's three-step complaint resolution procedure, which she bypassed. [Dkt. 19 at 1-3].

Plaintiff is correct on the law she cites. An at-will employee may possess an

implied contractual right to specified employment procedures. *Parker I*, 275 F. App'x at 771; *Parker II*, 620 F.Supp.2d at 1268-69. A disclaimer must be clear to be effective, and an employer's representations and practices inconsistent with its disclaimer may negate its effect. *Russell*, 952 P.2d at 502; *Johnson v. Nasca*, 1990 OK CIV APP 87, 802 P.2d 1294, 1297. Ordinarily, too, the existence of an implied contract is a factual question. *Dupree v. United Parcel Serv., Inc.*, 956 F.2d 219, 222 (10th Cir. 1992) (applying Oklahoma law). Those principles do not, however, carry Count I past Rule 12(b)(6) for two independent reasons.

First, the Board's disclaimer is clear and the FAC alleges no conduct inconsistent with it. The Handbook disclaims contractual intent in unqualified terms, and plaintiff acknowledged that disclaimer in writing; she also pleads the Handbook's companion reservation that its "information, policies and benefits … are subject to change" at the County's "sole and absolute discretion." [Dkt. 2-21, ¶ 21; *id.* at 44]. The conduct plaintiff offers as inconsistent—that Hanning, Ketchum, and Hendricks treated the Handbook as extant and valid, and that it was distributed to all employees—is not inconsistent with a disclaimer of contractual intent. An employer may maintain, publish, and administer personnel policies without undertaking to be bound by them in contract; that is precisely the distinction the Board's disclaimer draws. The same answer disposes of plaintiff's estoppel and waiver theories. Estoppel turns upon justifiable reliance upon the conduct of the party to be estopped, *Ind. Nat'l Bank*, 857 P.2d at 64, and waiver turns upon "an actual intention to relinquish a known right," *Torres*, 956 P.2d at 167 (citation omitted). Neither doctrine

manufactures a promise that was never made, and reliance is not justifiable where the writing relied upon expressly denies contractual force. That estoppel is generally unavailable against a governmental entity absent a countervailing principle only reinforces this conclusion. *See Ind. Nat'l Bank*, 857 P.2d at 64.

Second, and independently, the promises plaintiff identifies are not stated in definite terms. Oklahoma law limits handbook-based implied contracts in two respects: the manual alters the at-will relationship only with respect to accrued benefits, and the promises relied upon "must be in definite terms, not in the form of vague assurances." *Russell*, 952 P.2d at 502. Plaintiff seeks no accrued benefit, and the provision central to Count I—the direction that harassment complaints be handled "in as confidential a manner as possible"—is qualified on its face. [Dkt. 2-21, ¶¶ 10, 16; *id*. at 37-45]. A commitment to confidentiality only so far as "possible" fixes no ascertainable obligation and thus cannot supply the definite promise the law requires; where the alleged promises amount to no more than vague assurances, the question may be resolved as a matter of law. *Id*.; *Dupree*, 956 F.2d at 222. The *Parker* decisions illustrate this contrast rather than support plaintiff. The handbook there prescribed a definite, sequential grievance procedure governing termination, which the employee followed and the town did not. *Parker I*, 275 F. App'x at 771-73; *Parker II*, 620 F.Supp.2d at 1268-69. Plaintiff identifies no comparably definite procedural promise that the Board failed to honor in discharging her. Count I should therefore be dismissed as to both the express and the implied contract theories.

### B. COUNT II | PROMISSORY ESTOPPEL

The doctrine of promissory estoppel is grounded in § 90(1) of the Restatement (Second) of Contracts, which provides in pertinent part:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Accordingly, to state a claim for promissory estoppel under Oklahoma law, a plaintiff must allege facts showing:

> (1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment, and (4) hardship or unfairness can be avoided only by the promisee's enforcement.

*Russell*, 952 P.2d at 503.

In Count II, the FAC alleges that the Board made clear and unambiguous promises to plaintiff; it was foreseeable that plaintiff would, and did, rely upon those promises to her detriment; hardship or unfairness can be avoided only by enforcement of those promises; plaintiff further relied on the Employee Handbook when making her informal HR complaint and when determining whether to bypass her chain of command when doing so; and, alternatively, plaintiff relied to her detriment on the assurances provided by the Board. [Dkt. 2-21, ¶¶ 26-33]. Defendants argue that, aside from any implied promises made in the Handbook, plaintiff points to no specific promises made by the Board. [Dkt. 8 at 5].

Count II rises and falls with the same alleged promises. Defendants contend that the Handbook prescribed a specific procedure for grievances of the sort plaintiff

raised, that the Board made no promise concerning general complaints, and that plaintiff's reliance upon the County's harassment and discrimination procedure—reserved for allegations concerning sex, race, religion, sexual orientation or gender, national origin, age, or disability—was therefore unreasonable. [Dkt. 19 at 3-4]. Plaintiff asserts the Board "offered an explicit handbook" and may not disclaim it selectively. [Dkt. 17 at 8-9].

The first element of the doctrine is dispositive. Promissory estoppel requires "a clear and unambiguous promise." *Russell*, 952 P.2d at 503. For the reasons already given, the qualified confidentiality provision is not such a promise, and the FAC identifies no other. Plaintiff's remaining allegation—that she relied to her detriment upon "assurances provided by the Board" [Dkt. 2-21, ¶ 33]—does not identify what was assured, by whom, or when, and a pleading of that character is a legal conclusion the court must disregard. *Iqbal*, 556 U.S. at 678-79.

The third element fails as well. Reliance is not reasonable where the document relied upon states in terms that it creates no contract and that its contents may be changed at the employer's sole discretion, and where the employee has acknowledged as much in writing. [Dkt. 2-21, ¶ 21; *id.* at 44]. Plaintiff's authorities confirm that Oklahoma recognizes the doctrine of promissory estoppel, but recognition of a doctrine is not satisfaction of its elements. Count II should therefore be dismissed.

### C. COUNT III | MALICIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

To state a claim for malicious interference with a contractual relationship under Oklahoma law, a plaintiff must allege facts showing: "1) interference with a

business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, 212 P.3d 1158, 1165. The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse. *Id.* Additionally, such a claim "is viable only if the interferer is not a party to the contract or business relationship." *Wilspec Techs., Inc. v. DunAn Holding Grp., Co., Ltd.*, 2009 OK 12, 204 P.3d 69, 74 (citation omitted).

Two further principles govern a malicious interference claim against a supervisor. An agent of a contracting party ordinarily cannot be held liable for interfering with the principal's contract, *Voiles v. Sante Fe Minerals, Inc.*, 1996 OK 13, 911 P.2d 1205, 1209, unless the agent acts in bad faith and against the interests of the principal, in which event the agent acts outside the scope of employment and may be individually liable, *Martin v. Johnson*, 1998 OK 127, 975 P.2d 889, 895-97. Bad faith may not be inferred from the fact of interference alone. *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, 91 P.3d 673, 679. Second, an actual contract is not indispensable: Oklahoma recognizes interference with an at-will employment relationship and with prospective economic advantage alike, so the absence of an enforceable employment contract does not defeat the claim. *See Crystal Gass Co. v. Okla. Nat. Gas Co.*, 1974 OK 34, 529 P.2d 987, 990; *Fulton v. People Lease Corp.*, 2010 OK CIV APP 84, 241 P.3d 255, 263-64.

Defendants contend the FAC is devoid of any allegation that Ketchum acted in

bad faith or contrary to Wagoner County's interests, emphasizing that the Employee Handbook permitted the County to change its policies at will and that plaintiff was discharged for refusing to sign an acknowledgment of such a change. [Dkt. 8 at 6-7]. Plaintiff answers that Ketchum violated the Handbook, discharged her out of anger at her report of his conduct, and acted to conceal his own conduct, pointing to her allegation that he substituted a schedule for the one prepared by her supervising coworker and told her it was for her eyes only. [Dkt. 17 at 9-10; Dkt. 2-21, ¶ 36]. Defendants reply that Ketchum, as E-911's department director, held authority over scheduling, that plaintiff rather than Ketchum departed from the Handbook, and that the allegation of anger is conclusory. [Dkt. 19 at 4-5].

Measured against the pleading standard, Count III survives. The FAC alleges that Ketchum harassed a subordinate who reported fatigue; that he promptly confronted the same employee about what he believed to be her HR complaint and expressed his wish to terminate her; that he directed plaintiff to reduce her confidential report to writing for review outside HR; that he then presented plaintiff with a form acknowledging a purported new policy barring employees from contacting HR absent a referral through their chain of command; and that he discharged plaintiff the same afternoon she declined to sign. [Dkt. 2-21, ¶¶ 7-14, 34-36]. Those allegations, together with the alleged concealment of the altered schedule, permit the reasonable inference that Ketchum acted to suppress reporting of his own conduct and to insulate himself from scrutiny; that is, in furtherance of his own interests and against those of Wagoner County. *See Martin*, 975 P.2d at 896-97. So understood, the

alleged interference was "an unreasonable and wrongful act done intentionally, without just cause or excuse." *Tuffy's*, 212 P.3d at 1165. Nor is Count III barred by the rule of *Wilspec*: Ketchum is sued individually and is not a party to the employment relationship he is alleged to have disrupted. 204 P.3d at 74.

Ketchum's competing account may well prevail on a developed record. But it asks the court to credit his justification—lawful exercise of a director's authority and discharge for insubordination—and to draw inference in his favor, which Rule 12(b)(6) does not permit. Whether interference was "justified, privileged, [or] excusable," *Tuffy's*, 212 P.3d at 1165, is on these allegations a question for the factfinder. Count III should therefore not be dismissed.

### D. COUNTS IV AND V | 42 U.S.C. § 1983

#### 1. Section 1983 Overview

A § 1983 plaintiff must show: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A § 1983 defendant sued in their individual capacity, such as Ketchum, may be subject to personal liability and/or supervisory liability. Personal liability "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). To establish personal liability, a plaintiff must allege facts showing (1) the defendant's "personal involvement or participation" in the alleged constitutional violation, *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); (2) a causal connection between the acts of that defendant and the alleged

violation of a federal right, *Iqbal*, 556 U.S. at 676; and (3) that the defendant acted with the state of mind required for the underlying constitutional violation, *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The first inquiry on a qualified immunity defense is whether the allegations, if true, would amount to a constitutional violation. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). The second is whether a reasonable person in the defendant's position would have known that his conduct violated that right. *Id.* "Unlike other affirmative defenses, qualified immunity is not merely a defense to liability; it is also an immunity from suit." *Sawyer v. Cnty. of Creek*, 908 F.2d 663, 665 (10th Cir. 1990). In the context of a 12(b)(6) motion, the court's review of the qualified immunity defense is limited to the pleadings. *Neiberger v. Hawkins*, 6 F. App'x 683, 686 (10th Cir. 2001) (unpublished).[3] Although "mere conclusionary allegations without specific facts will not defeat the defense of qualified immunity," a *per se* heightened pleading standard does not apply to § 1983 claims. *Id.* The court must, as is customary on a Rule 12(b)(6) motion, construe the allegations and draw any reasonable inferences in plaintiff's favor. *Id.*

---

[3] Courts may rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case at hand. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."); *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

The challenged § 1983 claims are discussed separately below, followed by an analysis of Ketchum's invocation of qualified immunity.

**2. Count IV | First Amendment Retaliation**

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). A public employee's claim that she was retaliated against in violation of the First Amendment is evaluated under the five-part *Garcetti/Pickering* test:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). A "matter of public concern" is that which can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 147 (1983); *see Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999) ("'Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content," are matters of public concern) (citation omitted); *but see Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007) ("[S]peech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration" are not matters of

public concern). The fundamental inquiry is "whether the plaintiff speaks as an employee or as a citizen." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996) (citation omitted). To determine whether speech is directed at redressing a personal grievance, as opposed to a public issue or concern, the court must consider the content, form, and context of any statement, based on the record as a whole, as well as the speaker's motive. *Id.* at 1356; *Connick*, 461 U.S. at 147.

Ketchum argues that plaintiff's alleged speech concerning a coworker's complaints regarding internal departmental affairs, disputes over the terms of employment, and workplace frustration are of personal nature and not a matter of public concern. He further contends the allegations set forth in the FAC do not indicate that plaintiff's speech was a motivating factor in her termination. [Dkt. 8 at 8-9]. Plaintiff responds that her speech fell outside her duties as a dispatcher, that it concerned a supervisor's impropriety and working conditions bearing on the operation of a county emergency-dispatch center, that *Pickering* balancing is premature at this stage,[4] and that her discharge two days after submitting a complaint to HR supplies causation. [Dkt. 17 at 13-15]. The first three prongs of the *Garcetti/Pickering* test present questions of law for the court; the last two are left to the factfinder. *Bailey v. Indep. Sch. Dist. No. 69 of Canadian Cnty.*, 896 F.3d 1176, 1181 (10th Cir. 2018). Here, only the second and fourth elements are in dispute.

[4] Plaintiff relies on *Brown v. City of Tulsa*, 124 F.4th 1251, 1269-71 (10th Cir. 2025), for the proposition that "conducting *Pickering* balancing at the motion to dismiss stage is almost always improper," yet nevertheless proceeds to analyze the "*Pickering* test" in the alternative. [Dkt. 17 at 13]. That argument conflates the *Garcetti/Pickering* test with *Pickering* balancing. *See Brown*, 124 F.4th at 1267 (noting the third *Garcetti/Pickering* element is known as "*Pickering* balancing").

The second prong favors plaintiff. Speech that "discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials" ordinarily concerns a matter of public concern, *Prager*, 180 F.3d at 1190, as does speech identifying health and safety hazards in public operations, *Considine v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 910 F.2d 695, 700 (10th Cir. 1990). Grievances "about internal departmental affairs, disputes over the term of employment, and workplace frustration" do not. *Brammer-Hoelter*, 492 F.3d at 1205. The FAC alleges that a supervisor of a county 911 center berated a dispatcher for reporting fatigue and mental-health effects after working more than sixty hours a week for twenty consecutive days, and that the supervisor thereafter sought to bar employees from contacting HR at all. [Dkt. 2-21, ¶¶ 7-13]. Allegations of that character implicate both official impropriety and the operational fitness of an emergency-dispatch function on which the public depends, and they are therefore not confined to a purely private grievance. *Cf. Hawkins v. Bd. of Cnty. Comm'rs of Coffey Cnty.*, 376 F.Supp.3d 1200, 1213 (D. Kan. 2019).

Defendants' contrary reading is not implausible. They observe that plaintiff described herself as unwilling to "let[] this go" and as advocating for her coworker, never mentioning public safety, and that a dispute over a coworker's schedule is not rendered a public matter by the label "hostile work environment." [Dkt. 19 at 5-6]. But the inquiry into content, form, and context is made "as revealed by the whole record," *Connick*, 461 U.S. at 147-48, and on a Rule 12(b)(6) motion the court has no record beyond the FAC and the documents attached thereto. *See Brown*, 124 F.4th at

1263-64. Where, as here, the allegations support either characterization, the question cannot be resolved against the plaintiff at this stage.

The fourth prong, causation, is likewise adequately pleaded. A plaintiff must allege that protected speech was a substantial motivating factor in the adverse action. *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1236 (10th Cir. 2009). Temporal proximity may itself support the inference; the Tenth Circuit has held that a gap of one and one-half months between protected activity and adverse action may alone establish causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Here, plaintiff was discharged two days after her report. [Dkt. 2-21, ¶¶ 8, 14]. Ketchum's insubordination rationale does not neutralize that inference at the pleading stage: the form plaintiff refused to sign is alleged to have been an instrument for suppressing the very reporting at issue, and the purported policy change is alleged to have conflicted with the Employee Handbook and to have been pretextual. Accordingly, Count IV should not be dismissed.

**3. Count V | Right of Access**

The FAC alleges that Ketchum retaliated against plaintiff for retaining counsel by instructing Director Rafalko to contest her unemployment claim and by advancing a false rationale of insubordination to the Oklahoma Employment Security Commission ("OESC"), in violation of a right of access secured by the First Amendment, the Due Process Clause, and the Privileges and Immunities Clause. [Dkt. 2-21, ¶¶ 48-55]. Plaintiff contends that Ketchum did not move to dismiss this claim and declines to address it in her response. [Dkt. 17 at 25]. That reading is mistaken, as defendants' motion expressly addresses the Count V allegations and

seeks dismissal for want of any pleaded damage. [Dkt. 8 at 8-9]. Count V is thus properly before the court.

To plead a denial of the constitutional right of access to the courts, a plaintiff must satisfy a standard the Supreme Court has carefully bounded. Access-to-courts claims fall into two categories: "forward-looking" claims, where official action presently frustrates a plaintiff's ability to bring suit, and "backward-looking" claims, where past official conduct has already caused the loss, or inadequate settlement, of a specific case, rendering hollow the plaintiff's right to seek redress. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). A backward-looking claim—the type asserted here—must plead, "as though it were being independently pursued," a nonfrivolous underlying cause of action frustrated by the defendant's conduct, and must identify a remedy that could be awarded as recompense but is "not otherwise available in some suit that may yet be brought." *Id*. at 415-16. The Tenth Circuit has applied this framework outside the prison context: in *Jennings v. City of Stillwater*, the court affirmed dismissal of a backward-looking access claim premised on police investigative misconduct because the plaintiff failed to allege that her eventual settlement of the underlying tort claim was inadequate on account of the defendants' conduct. 383 F.3d 1199, 1209-10 (10th Cir. 2004). And because liability under § 1983 is personal, the complaint must also plead facts connecting the individual defendant's own acts to the asserted deprivation. *Iqbal*, 556 U.S. at 676, *Foote*, 118 F.3d at 1423.

Assuming without deciding that the pursuit of an unemployment claim with the assistance of counsel implicates a protected right of access—an assumption

plaintiff's own allegations invite, *see* [Dkt. 2-21, ¶¶ 18-19, 48-55]—the FAC does not come close to satisfying this standard. It does not allege that plaintiff was denied benefits, denied a hearing, prevented from retaining or consulting counsel, or otherwise impeded in presenting her position to the OESC, nor does it allege that any remedy available through the OESC's adjudicative process was rendered inadequate by Ketchum's conduct; the FAC is silent as to the outcome of the proceeding altogether. Absent such allegations, plaintiff supplies neither a frustrated underlying claim nor an unavailable remedy. *Harbury*, 536 U.S. at 415-16; *Jennings*, 383 F.3d at 1209-10.

In sum, without allegations connecting Ketchum's conduct to some cognizable deprivation, the FAC fails both *Harbury*'s pleading requirements and the personal-liability standard *Iqbal* and *Foote* demand. Count V should therefore be dismissed.

**4. Qualified Immunity**

When qualified immunity is raised, the plaintiff bears the burden of showing that the defendant's conduct violated a constitutional right and that the right was clearly established at the time of the conduct. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). A right is clearly established when, at the time of the challenged conduct, its contours were sufficiently clear that every reasonable official would have understood that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The question must be answered in the specific context of the case rather than as a broad general proposition, *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012), and ordinarily requires a Supreme Court or Tenth Circuit

decision on point or the clearly established weight of authority elsewhere, *Klein v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011). The unlawfulness need not have been established by a case with identical facts, but it must be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As to Count IV, the defense cannot be sustained on the pleadings. Plaintiff has alleged a constitutional violation, and the governing rule was clearly established long before June 2025: a public employer may not discharge an employee in retaliation for speech protected under the *Garcetti/Pickering* framework. *McFall v. Bednar*, 407 F.3d 1081, 1090 (10th Cir. 2005). Ketchum's submission that no authority particularized to these facts placed the question beyond debate depends upon his premise that plaintiff's speech was unprotected—a premise the court cannot accept on this record. Taking the allegations as true and drawing all reasonable inferences in plaintiff's favor, the FAC describes the discharge of an employee two days after she reported a supervisor's misconduct, for declining to sign an acknowledgement suppressing such reports. Immunity should accordingly be denied as to Count IV, without prejudice to its reassertion on a developed record.

With respect to Count V, the first inquiry resolves the defense. Because the FAC does not allege facts amounting to a violation of plaintiff's right of access, Ketchum is entitled to qualified immunity on Count V, and the court need not reach whether any such right was clearly established. *See Tonkovich*, 159 F.3d at 516.

### E. COUNT VI | *BURK* TORT

Oklahoma's default rule is that employment is terminable at will, "which means that either the employer or the employee may terminate the employment

relationship at any time for any reason or no reason at all without incurring liability for doing so." *Patel v. Tulsa Pain Consultants, P.C.*, 2022 OK 56, 511 P.3d 1059, 1062. In *Burk*, the Oklahoma Supreme Court recognized a public policy exception permitting a tort action for wrongful discharge. 770 P.2d at 28-29. To state such a claim, a plaintiff must allege: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal." *Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty.*, 2008 OK 35, 186 P.3d 928, 932. The exception is "tightly circumscribed," *id.* at 931, and an employer's violation of a state-declared public policy is its "fundamental predicate," *Booth v. Home Depot, U.S.A., Inc.*, 2022 OK 16, 504 P.3d 1153, 1156 (citation omitted).

Plaintiff grounds Count VI in two sources of public policy: the free speech guarantee of Article 2, § 22 of the Oklahoma Constitution, and the safe-workplace and anti-retaliation provisions of OOHSSA, 40 O.S. § 403. [Dkt. 2-21, ¶¶ 58-59; Dkt. 17 at 17-21]. The Board responds that the factual allegations do not support either theory, that a *Burk* claim is unavailable where an effective federal or state remedy exists, and that in any event the OGTCA exempts it from liability. [Dkt. 8 at 10-11].

The constitutional theory fails on the fifth *Vasek* element. Recent decisions confine the *Burk* tort "to circumstances in which a plaintiff does not have an effective federal or state remedy to redress the harm alleged in the claim." *Wittmer v.*

*Thomason*, No. 18-CV-403-SPS, 2021 WL 849981, at *10 (E.D. Okla. Feb. 26, 2021) (citation omitted). Plaintiff seeks redress for a single discharge under both § 1983 and Article 2, § 22, without explaining why the federal remedy is inadequate or would warrant a separate and distinct recovery. *See Underwood*, 611 F.Supp.2d at 1234 & n.8. Plaintiff's own framing confirms the point: she argues that if her speech is unprotected under *Garcetti*, she "would not have an adequate statutory remedy," relying upon the broader working of the state guarantee, *Gaylord Entm't Co. v Thompson*, 1998 OK 30, 958 P.2d 138 n.23, and upon *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 803-04 (10th Cir. 2007). [Dkt. 17 at 17-19]. Because the court recommends that the First Amendment retaliation claim (Count IV) proceed, the contingency on which plaintiff's argument rests has not come to pass, and the federal remedy remains available and adequate to redress the discharge. That the Oklahoma guarantee may sweep more broadly does not entitle plaintiff to duplicative recovery for the same injury. *See Trant v. Oklahoma*, 874 F.Supp.2d 1294, 1303-04 (W.D. Okla. 2012).

The OOHSSA theory clears the fifth element, since the Oklahoma Supreme Court has held that no statutory remedy adequate to protect the policy of protecting employees who report unsafe or unhealthy working conditions exists. *Vasek*, 186 P.3d at 934. It founders, however, on governmental immunity. The OGTCA is the exclusive means of recovering against an Oklahoma governmental entity in tort, and its limited waiver of immunity is subject to enumerated exemptions. *See* 51 O.S. §§ 152(14), 153; *Fuller v. Odom*, 1987 OK 64, 741 P.2d 449, 451-53; *see also* 51 O.S. § 155; *Salazar v.*

*City of Okla. City*, 1999 OK 20, 976 P.2d 1056, 1066. Among them is the exemption for the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." 51 O.S. § 155(5). Courts applying that provision have consistently treated a political subdivision's employment decisions as discretionary. *See Jackson v. Okla. City Pub. Schs.*, 333 P.3d 975, 979 (Okla. Civ. App. 2014); *Houston v. Indep. Sch. Dist. No. 89 of Okla. Cnty.*, 949 F. Supp. 2d 1104, 1109 (W.D. Okla. 2013); *Burns v. Holcombe*, 2010 WL 2756954, at *15 (E.D. Okla. July 12, 2010) (unpublished); *see also* [Dkt. 8 at 11 (collecting cases)].

Plaintiff's reliance upon the narrow construction of the discretionary function exemption does not overcome that authority. She correctly observes that the exemption is "extremely limited," that almost all acts of government employees involve some element of choice, and that immunity attaches to the formulation of policy rather than to its routine daily implementation. [Dkt. 17 at 21-22 (citing *Nguyen v. State*, 1990 OK 21, 788 P.2d 962, 964-65; *State ex rel. Okla. Dep't of Pub. Safety v. Gurich*, 2010 OK 56, 238 P.3d 1, 4)]. But the decision whether to retain or discharge a particular employee is not the ministerial execution of an already-formulated policy; it is the exercise of judgment concerning personnel that the cited authorities place within § 155(5). The Board is therefore exempt from liability on Count VI, and the court need not reach defendants' further contention that the duty-of-care authorities plaintiff cites do not articulate a public policy sufficiently well established to support a *Burk* claim. *Cf. Tomblin v. Int'l Flavors & Fragrances, Inc.*,

No. 25-CV-82-MTS, 2025 WL 2245148, at *4 (N.D. Okla. Aug. 5, 2025); *Wilson v. Yuba Heat Transfer, LLC*, No. 11-CV-80-CVE-TWL, 2011 WL 3241385, at *5 (N.D. Okla. July 28, 2011). Count VI should be dismissed in its entirety.

### F. COUNT VII | RETALIATION UNDER OOHSSA

Count VII asserts a claim directly under OOHSSA's anti-retaliation provision, which provides that "[n]o person shall discharge, discriminate or take adverse personnel action against any employee because such employee has filed any complaint, or instituted or caused to be instituted any proceeding under or related to this act." 40 O.S. § 403(B). Plaintiff concedes that § 403(B) creates no express private right of action, [Dkt. 17 at 23], and the Board contends that none may be implied because the remedy for a discharge offending the policy the statute declares is a *Burk* tort. [Dkt. 8 at 12 (citing *Vasek*, 186 P.3d at 934)]. Plaintiff urges that a private remedy should be implied under a three-part test: whether the plaintiff is one of the class for whose especial benefit that statute was enacted; whether some indication of legislative intent suggests that the Legislature wished to create a private remedy rather than to deny one; and whether implying a remedy would be consistent with the underlying purposes of the legislative scheme. [Dkt. 17 at 23-24 (quoting *Owens v. Zumwalt*, 2022 OK 14, 503 P.3d 1211, 1215)].

The controlling authority is *Vasek*. There, the Oklahoma Supreme Court held that no statutory remedy sufficient to guard the public policy goal of protecting employees who report unsafe or unhealthy working conditions, as declared by the OOHSSA, exists—which is why the *Burk* tort was available. *Vasek*, 186 P.3d at 934.

Were § 403(B) understood to confer a private right of action, the fifth element of the *Burk* analysis could not have been satisfied in *Vasek*, and the tort remedy the court there sustained would have been unnecessary. The second prong of the implied-remedy test fails for the same reason: rather than signaling an intent to create a private action, the Legislature furnished public enforcement mechanisms, penalties, and remedies, 40 O.S. §§ 412-413, and Oklahoma courts have located the private remedy in the common law of tort instead. Plaintiff's remaining authorities concerning the breadth with which anti-retaliation provisions are construed address the reach of such provisions where a right of action exists; they do not supply one. *See Lujan v. Minagar*, 124 Cal. App. 4th 1040, 1045 (Cal. Ct. App. 2004); *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996); *Reynolds v. Advance Alarms, Inc.*, 2009 OK 97, 232 P.3d 907, 912. Count VII fails as a matter of law and should be dismissed.

### G. LEAVE TO AMEND

Defendants contend that further amendment would be futile and that plaintiff could not truthfully amend her allegations consistent with Fed. R. Civ. P. 11(b)(3). [Dkt. 8 at 14]. Plaintiff makes no explicit response and no request for leave to amend.

The recommended dismissals are not of a single character. Counts I, II, and V fail because the FAC lacks allegations that might, at least in principle, be supplied: a promise stated in definite terms, conduct inconsistent with the Employee Handbook's disclaimer, or injury flowing from the alleged interference with plaintiff's access to OESC. The court cannot say on this record that no amendment could cure

those deficiencies, and dismissal of those counts should therefore be without prejudice, with plaintiff permitted to seek leave to amend by motion under Fed. R. Civ. P. 15(a)(2), accompanied by a proposed second amended complaint, within the time set by the District Court. *See* LCvR 7.1(k). Counts VI and VII, by contrast, fail for reasons of law that no amendment can alter: the Board's exemption from tort liability for its employment decisions under § 155(5) of the OGTCA, the unavailability of a duplicative *Burk* remedy alongside the surviving § 1983 claim for First Amendment retaliation, and the absence of a private right of action under § 403(B) of OOHSAA. Those counts should be dismissed with prejudice.

## IV. CONCLUSION

Count I fails because the Employee Handbook contains an unqualified disclaimer of contractual intent, and the FAC alleges no conduct inconsistent with that disclaimer. The confidentiality provision plaintiff invokes is qualified on its face and amounts to no more than a vague assurance, not the definite promise required to support an implied contract. Count II fails for the same general reason: apart from the qualified confidentiality provision, the FAC identifies no clear and unambiguous promise, and reliance on a policy handbook that expressly disclaims contractual force is not reasonable as a matter of law.

Counts III and IV, by contrast, should proceed. The FAC plausibly alleges that Ketchum acted in bad faith and contrary to Wagoner County's interests in discharging plaintiff, and that plaintiff's protected speech was a substantial motivating factor in her termination, which occurred two days after she reported his

conduct. Qualified immunity is unavailable to Ketchum on the latter claim at this stage.

Count V fails because the FAC pleads neither a nonfrivolous underlying claim frustrated by Ketchum's conduct nor a remedy rendered unavailable by it, and Ketchum is independently entitled to qualified immunity on this count. Count VI fails because the surviving federal remedy in Count IV forecloses the constitutional prong of the *Burk* analysis, and because the Board's decision to discharge plaintiff is a discretionary personnel judgment exempt from tort liability under the OGTCA, 51 O.S. § 155(5). Count VII fails because *Vasek* treats the *Burk* tort, not an implied statutory action, as the exclusive remedy for the retaliation prohibited by OOHSSA.

IT IS THEREFORE RECOMMENDED that defendants' Motion to Dismiss [Dkt. 8] be **GRANTED in part** and **DENIED in part**. Plaintiff's claims for breach of contract, promissory estoppel, and right of access under § 1983 (Counts I, II, and V) should be **DISMISSED without prejudice**. Ketchum should also be granted qualified immunity as to Count V. Plaintiff's *Burk* tort claim for violations of Oklahoma public policy and retaliation claim under § 403(B) of OOHSAA (Counts VI and VII) should be **DISMISSED with prejudice**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file any objections with the Clerk of the court. Any objection and response thereto shall be limited to ten (10) pages in length, and a reply is permitted only with leave of court upon a showing of good cause. Failure to object to this Report and Recommendation within fourteen (14) days will preclude

review of this decision by the District Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

DATED this 6th day of August, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE